FILED

## IN UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2015 SEP -1  PM 1:21

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

**COREY MILLEDGE,**
    **Plaintiff,**

                                **Case No.: 3:14-cv-248-J-32MCR**

**v.**

**WALTER McNEIL, JULIE JONES,**
**BARRY REDDISH, BRAD WHITEHEAD,**
**NAN A. JEFFCOAT, BARRY WALDEN,**
**ERIC CANIDA, VERNON LEE,**
**PHILIP MAGNINNIS, CHRISTOPHER McFARLAND,**
**CRAIG SLOCUM, MICHAEL HARRIS,**
**SHAWN SWAIN, JAMES FLEMING, SARAH SALLE,**
**JESSE KELLY, MICHAEL JENKINS, JULIAN BULLARD,**
**BRIAN NORMAN, FREDERICK WALKER, SALINA GASKINS,**
    **Defendant(s).**

_____/

## FIRST AMENDED COMPLAINT

1. Plaintiff Corey Milledge sues Defendants and alleges:

2. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. Section 1331 and 1343. Plaintiff Milledge seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiff Milledge's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rule of Civil Procedure.

1

3. Venue and jurisdiction are proper in this Court because of the wrongful act complained of occurred in the Middle District of Florida.

## PARTIES

4. Plaintiff Corey Milledge is an inmate in custody of the Florida Department of Corrections currently at Blackwater River Correctional Institution, mailing address: 5914 Jeff Ates Road, Milton, Fl 32583.

5. At all times material hereto, Defendant Walter McNeil was Secretary of the Florida Department of Corrections, charged with care and custody of all Florida Department of Corrections prisoners. He is sued in his individual capacity and official capacity. Plaintiff is unable to obtain mailing address for Defendant McNeil.

6. At all times material hereto, Defendant Julie Jones is Secretary of the Florida Department of Corrections, charged with care and custody of all Florida Department of Corrections prisoners. She is sued in her official capacity. Mailing address: 501 S. Calhoun Street, Tallahassee, Florida 32399-2500.

7. At all times material hereto, Defendant Barry Reddish was warden of Union Correctional Institution, charged with care and custody of prisoners. He is sued in his individual capacity and official capacity. Plaintiff is unable to obtain mailing address for Defendant Reddish.

CFCF Law Library

8. At all times material hereto, Defendant Brad Whitehead was Asst. Warden of Union Correctional Institution, charged with care and custody of prisoners. He is sued in his individual capacity and official capacity. Plaintiff is unable to obtain mailing address for Defendant Whitehead.

9. At all times material hereto, Defendant Nan A. Jeffcoat was Asst. Warden of Union Correctional Institution, charged with care and custody of prisoners. She is sued in her individual capacity and official capacity. Plaintiff is unable to obtain mailing address for Defendant Jeffcoat.

10. At all times material hereto, Defendant Barry Walden is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

11. At all times material hereto, Defendant Eric Canida is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

12. At all times material hereto, Defendant Vernon Lee is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

SRCF Law Library

13. At all times material hereto, Defendant Christopher McFarland is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

14. At all times material hereto, Defendant Craig Slocum is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

15. At all times material hereto, Defendant Sarah Salle is an officer at Union Correctional Institution, acting within the course and scope of her employment and under color of state law. She is sued in her individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

16. At all times material hereto, Defendant Jesse Kelly is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

17. At all times material hereto, Defendant Frederick Walker is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

18. At all times material hereto, Defendant Julian Bullard is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

19. At all times material hereto, Defendant Brian Norman is an officer at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

20. At all times material hereto, Defendant James Flemming is a correctional Sergeant at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

21. At all times material hereto, Defendant Philip Maginnis is a correctional Sergeant at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

22. At all times material hereto, Defendant Michael Harris is a correctional Sergeant at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

FRCP Law Library

23. At all times material hereto, Defendant Michael Jenkins is a correctional Sergeant at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

24. At all times material hereto, Defendant Shawn Swain is a correctional Lieutenant at Union Correctional Institution, acting within the course and scope of his employment and under color of state law. He is sued in his individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

25. At all times material hereto, Defendant Salina Gaskins is a nurse at Union Correctional Institution, acting within the course and scope of her employment and under color of state law. She is sued in her individual capacity. Mailing address: 7819 NW 228th Street, Ralford, Florida 32026.

## PREVIOUS LAWSUIT

26. Plaintiff Milledge has previously filed a lawsuit in this court. In that case, a settlement was reached. See, this Court's Case, NO: 3:07-cv-976-J-34MCR.

27. Plaintiff Milledge has previously filed three petition for writ of habeas corpus in the United States District Court, Northern District of Florida, Tallahassee Division. Two of Plaintiff's petition for writ of habeas corpus are still pending. Plaintiff does not know the Court's case numbers.

28. Plaintiff Milledge never had a petition for writ of habeas corpus and never had a lawsuit dismissed for frivolous or malicious or for failure to state a claim.

## EXHAUSTION OF LEGAL REMEDIES

29. Plaintiff Milledge used the prison grievance system that was available at Union Correctional Institution to exhaust his administrative remedies prior to filing this lawsuit. In fact, Plaintiff filed numerous grievances with the Warden and Secretary of the Florida Department of Corrections. Plaintiff's grievances was either "Approved" or "Denied."

## FACTS

30. Plaintiff Corey Milledge is an inmate in the Florida Department of Corrections who is serving a fifteen (15) year prison sentence for the charges of: Felony Battery; Battery on Specified Employee; Battery on Inmate; Battery on a Law Enforcement Officer; and Possession of Contraband.

31. At all times relevant to the incident herein, Plaintiff Corey Milledge was either twenty-three (23) or twenty-four (24) years old, with a height of 5'7":, and weighing 150 pounds. Plaintiff was also a mental health patient.

32. On March 15, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in N-Dormitory. Defendant Corrections Officers Eric

Canida and Vernon Lee came to Milledge's cell. Officer Canida told Milledge that he had a dental call out. Officer Canida asked Milledge if he would like to go. Milledge said "yes." Milledge was placed in handcuffs, waist chain, and leg shackles. Officer Canida said to Milledge, "Lake Butler Jit is fixing to get you." Officer Canida is referring to Inmate Robert Willis whose nickname is "Lake Butler Jit" at Union C.I. Officer Lee heard the threats against Milledge and failed to report Officer Canida's remarks to any superior officer in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with Physical Abuse of Inmates.

33. Officer Lee then said to Milledge, "you fixing to get your ass whoop fuck boy." Officers Canida and Lee escorted Milledge to the holding cell. Once inside, Inmate Robert Willis slipped his right hand out of the handcuffs and punched Milledge in the head and back repeatedly and bit him on the right side of his ear. While Milledge was in handcuffs, waist chain, and leg shackles. Officer's Canida and Lee stood by watching and did not intervene when they had an opportunity to do so. Officers Canida and Lee walked away from the holding cell.

34. Inmate Willis continued to beat Milledge while he was in handcuffs, waist chain, and leg shackles. Inmate Willis grabbed Milledge around the neck. Defendant correctional Sergeant James Fleming came to the holding cell. Sergeant Fleming saw Inmate Willis choking Milledge. Sergeant Fleming encouraged

Inmate Willis' wrongdoing by saying, "Inmate Willis beat his ass some more!" That said, Inmate Willis punched Milledge in the head repeatedly which caused him to fall unconscious couple times. Milledge regained his consciousness. Sergeant Fleming said to Inmate Willis, "That's enough he learn his lesson." The beating against Milledge ceased. Officer Lee came back to the holding cell and escorted Milledge to his assigned cell. While Officer Lee was escorting Milledge to his assigned cell, Officer Lee taunted Milledge saying, "That's what you get." Milledge's handcuffs, waist chain, and leg shackles were removed. Milledge was then placed in the cell. Officer Lee walked away from the cell.

35. Sergeant Fleming came to Milledge's cell with a refusal form in his hand. Sergeant Fleming said to Milledge, "Sign right here to refuse your dental call out, if you do not sign it you are going on property restriction." Milledge signed the refusal form because Sergeant Fleming made threats against him. After Milledge signed the refusal form, Milledge asked Sergeant Fleming for medical attention because he was bleeding from the nose and felt agonizing pain in his back area. Sergeant Fleming ignored Milledge requests for medical attention. Sergeant Fleming then went to Inmate Willis' cell and made him sign a refusal form to refuse his dental call out as well. This was captured on the surveillance cameras at Union Correctional Institution. Milledge requested the surveillance cameras to be withheld for further evidence.

BRCF Law Library

36. As a result of the attack, Plaintiff suffered injuries to his shoulders and back and had a laceration on the top and underneath his nose area. Plaintiff was also bleeding from the nose.

37. Defendant Walter McNeil was Secretary of the Florida Department of Corrections at the time while Defendant Reddish was Warden and Defendants Whitehead and Jeffcoat were Assistant Warden of Union Correctional Institution, they were the policymakers who were responsible for setting the Department of Corrections policies or rules, protecting inmates, and disciplining corrections officers at Union Correctional Institution. Defendants McNeil, Reddish, Whitehead, and Jeffcoat were also responsible for enforcing all policies, rules, and orders at Union Correctional Institution.

38. On March 22, 2010, Plaintiff Milledge addressed a grievance to Defendants Reddish and Whitehead requesting protection from Officers Canida, Lee, and Fleming. Plaintiff placed Defendants Reddish and Whitehead on notice, and after such notice Defendants Reddish and Whitehead were aware of Inmate Willis irrational behavior which caused Plaintiff suffered injuries to his back. Defendants Reddish and Whitehead were also made aware that Officers Canida, Lee, and Fleming stood by watching Inmate Willis physically abused Plaintiff.

39. Defendants Reddish, Whitehead, and Jeffcoat were aware of the long-standing custom or policy of the Code of Silence and Non-Interference with

Physical abuse of inmates that was maintained at Union Correctional Institution, a custom or policy that they condoned or acquiesced in and continued in effect when they became warden of Union Correctional Institution. Thus, Defendants Reddish, Whitehead, and Jeffcoat failed to discipline officers who physically abused inmates or failed to discipline officers who stood by watching other officers physically abuse inmates. Likewise and for the same reasons apply to Defendant McNeil who was secretary of the Florida Department of Corrections at the time. Defendant McNeil was also aware of the custom or policy above.

40. Since Defendants Reddish, Whitehead, Jeffcoat, and McNeil failed to supervise, discipline, and terminate officers who physically abused inmates or officers who stood by watching other officers physically abuse inmates encouraged or sent a message to corrections officers that the administration at Union Correctional Institution was going to allow physical abuse against inmates.

41. ON March 25, 2010, Plaintiff Corey Milledge was transported from Union Correctional Institution to the reception and medical center to have physical therapy on his left shoulder. Milledge was transported back to Union Correctional Institution that same day and was taken to the movement center and placed in a holding cell. An officer gave Milledge a bag lunch. The officer ordered Milledge to take his bag lunch to the dorm. The officer walked away from the holding cell.

42. Defendant corrections officers Eric Canida and Vernon Lee, and Sergeant James Fleming came to the holding cell. Sergeant Fleming opened the holding cell door. Milledge walked out of the holding cell with the bag lunch in his hands. Sergeant Fleming saw that. Sergeant Fleming said to Milledge, "You not taken it to the dorm." Sergeant Fleming snatched the bag lunch out of Milledge's hands. Milledge said to Sergeant Fleming, "Why you taken my shit, you denying me my lunch meal." That said, Sergeant Fleming punched Milledge in the stomach several times while he was in handcuffs, waist chain, and leg shackles. Officers Canida and Lee stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with Physical Abuse of Inmates.

43. Sergeant Fleming told Milledge that what he get for running his "mouth too much." Sergeant Fleming then said to Milledge, "I'm going to put you on property restriction if you say anything about what happened today." Milledge was then taken to N-Dormitory and placed in his assigned cell.

44. As a result of the attack, Plaintiff suffered injuries to his back and stomach. Plaintiff also had agonizing pain in his stomach for approximately one (1) week.

45. On March 26, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish and on April 1, 2010, to Defendant Whitehead requesting

12

protection from officers Canida, Lee, and Fleming. Plaintiff placed Defendants Reddish and Whitehead on notice, and after such notice Defendants Reddish and Whitehead were aware of Sergeant Fleming irrational behavior which caused Plaintiff suffered injuries to his stomach. Defendants Reddish and Whitehead were also made aware that officers Canida and Lee stood by watching Sergeant Fleming physically abused Plaintiff.

46. On April 1, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in N-Dormitory. Defendant Nurse Salina Gaskins came to Milledge's cell. Milledge asked Nurse Gaskins for a sick call slip. Nurse Gaskins said to Milledge, "You disrespect me yesterday, get off that door." Milledge once again asked Nurse Gaskins for a sick call slip. Nurse Gaskins then said to Milledge, "I'm going to say you gunning me Milledge so you can go on property restriction, my boyfriend Swain going to beat your ass, he will be at your door later on to counsel you, and you not getting a sick call slip." Nurse Gaskins walked away from the cell.

47. Defendant correctional Lieutenant Shawn Swain came to Milledge's cell. Lieutenant Swain said to Milledge, "I'm going to break your jaw, you going on property restriction, stop kicking on the door." Lieutenant Swain walked away from the cell.

48. Lieutenant Swain came back to Milledge's cell. Lieutenant Swain said to Milledge, "I'm going to get you today for exposing yourself to nurse Gaskins, she told me what you did, I got you, you going to get sprayed today after I run the extraction team so get ready!" Lieutenant Swain walked away from the cell.

49. Lieutenant Curtis came to Milledge's cell. Lieutenant Curtis said to Milledge, "Lieutenant Swain told you what time it is, are you ready?" Milledge replied, "I didn't do nothing, I got a psych emergency because I feel suicidal." Lieutenant Curtis told Milledge, "Hold that thought, I will be back." Lieutenant Curtis walked away from the cell.

50. Lieutenant Curtis came back to Milledge's cell with Officer Cranford. Officer Cranford had a hand held camera in his hands. The handheld camera was turned on and placed on Milledge. Lieutenant Curtis ordered Milledge to cease his disruptive behavior. Lieutenant Curtis then told Milledge if he did not cease his disruptive behavior chemical agent will be administered against him. Milledge informed Lieutenant Curtis that he wanted to kill himself. Lieutenant Curtis ordered an officer to spray Milledge. Lieutenant Curtis opened the flap. An officer sprayed Milledge with chemical agent when Milledge was not being disruptive nor kicking or banging on the cell door. This was captured on the handheld camera at Union Correctional Institution. Milledge requested the handheld camera to be withheld for further evidence.

51. Lieutenant Curtis closed the flap. Lieutenant Curtis and the officer walked away from the cell. A few minutes later Lieutenant Curtis and the officer came back to Milledge's cell. Lieutenant Curtis ordered Milledge to cuff up. Milledge informed Lieutenant Curtis that he would cuff up. Lieutenant Curtis ordered Milledge to back away from the door. Milledge backed away from the door. Milledge informed Lieutenant Curtis that he could not see. Lieutenant Curtis ordered an officer to spray Milledge. Lieutenant Curtis once again opened the flap. The officer sprayed Milledge with chemical agent when Milledge was not being disruptive nor kicking or banging on the cell door. Lieutenant Curtis then closed the flap. Lieutenant Curtis and the officer walked away from the cell.

52. Lieutenant Swain came back to Milledge's cell. Lieutenant Swain ordered Milledge to cuff up. Lieutenant Swain opened the flap. An officer placed Milledge in handcuffs. The cell door was opened. AN officer placed Milledge in waist chain, and leg shackles. The officers escorted Milledge to the shower room. Milledge's handcuffs, waist chain, and leg shackles were removed. Milledge took a shower. Once Milledge took a shower, an officer placed Milledge back in handcuffs, waist chain, and leg shackles. The officers escorted Milledge to the medical room. A nurse saw Milledge for a post use-of-force physical.

53. The officers escorted Milledge back to his assigned cell. Once there, an officer took off Milledge's waist chain and leg shackles. Milledge was then placed

15

in the cell and the cell door were closed. The flap was opened. An officer used his handcuff key to take off one of Milledge's handcuffs. Milledge moved back. Two officers grabbed Milledge's arm. The officer who was standing on Milledge's left side grabbed Milledge's left thumb and twisted it way back in an attempt to break it. Lieutenant Swain and other corrections officers stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with Physical Abuse of Inmates.

54. Lieutenant Swain ordered an officer to handcuff Milledge in the back of him. While the flap was opened, an officer handcuffed Milledge in the back of him when Lieutenant Swain was aware that Milledge had a medical pass to be handcuffed in the front of him at all times. After an officer handcuffed Milledge in the back of him, the cell door was opened. An officer placed Milledge in waist chain and leg shackles. The officers then escorted Milledge back to the medical room. A nurse once again saw Milledge for a post use-of-force physical. While the nurse was seeing Milledge for a post use-of-force physical, Milledge told two nurses that his eyes was burning. The nurses said to Milledge that they don't have nothing to wash his eyes out with. The officers escorted Milledge back to his assigned cell. Milledge was then placed in the cell and the cell door were closed.

55. As a result of the attack and the denial of medical care, Plaintiff suffered injuries to his shoulders, back, eyes, left thumb, and knee, and also suffered from breathing problems and chest pain and had a laceration to his left thumb. Plaintiff's left thumb was also swollen for approximately two (2) weeks.

56. On April 1, 5, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish and on April 8, 2010, to Defendant Whitehead requesting medical treatment and protection from officers Curtis and Swain and nurse Gaskins. Plaintiff placed Defendants Reddish and Whitehead on notice, and after such notice Defendants Reddish and Whitehead were aware of officers Curtis and Swain and other officers and nurse Gaskins irrational behavior which caused Plaintiff suffered injuries to either his eyes, shoulders, back, knee, and left thumb and also caused Plaintiff suffered from breathing problems and chest pain. Defendants Reddish and Whitehead were also made aware that Lieutenant Swain and nurse Gaskins had threatened Plaintiff and that Lieutenant Swain intentionally interfered with medical treatment that was prescribed to Plaintiff and that Lieutenant Swain and other officers stood by watching an officer physically abused Plaintiff.

57. On April 2, 2010, at Union Correctional Institution, Defendant Correctional Lieutenant Shawn Swain threatened Plaintiff Corey Milledge. On April 11, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish

17

requesting protection from Lieutenant Swain. Plaintiff placed Defendant Reddish on notice that Lieutenant Swain threatened him saying, "I told you yesterday that I was going to have you sprayed, I'm going to kill you, I got something for you."

58. On April 4, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in N-Dormitory. Defendant Nurse Salina Gaskins came to Milledge's cell. Milledge asked Nurse Gaskins for a sick call slip so he could receive medical treatment because he suffered from injuries to his neck, shoulders, and back which caused him pain and also suffered from breathing problems and chest pain. Nurse Gaskins told Milledge that she would not give him one. Nurse Gaskins walked away from the cell.

59. Plaintiff sought medical treatment from Defendant Reddish because Nurse Gaskins refused to give him a sick call slip. On April 7, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting medical treatment. Warden Reddish forwarded Plaintiff's grievance to Defendant Jeffcoat for response. Plaintiff placed Defendants Reddish and Jeffcoat on notice that he was physically assaulted by officers and inmate either on November 22, 2003, March 15, 2010, March 25, 2010, and April 1, 2010, and that he had suffered injuries to his neck, shoulders, and back and also suffered from breathing problems and chest pain and that his requests for medical treatment and therapy had been ignored by Nurse Gaskins.

60. Florida prisons, and in particular Union Correctional Institution have a policy of ignoring, minimizing, and failing to document or treat injuries to inmates suffered as a result of use of force by corrections officers as a way of protecting prison security officers from liability for excessive use of force. This policy existed prior to the time Defendants Reddish, Whitehead, and Jeffcoat became Warden of Union Correctional Institution, but it was continued to be enforced by Reddish, Whitehead, and Jeffcoat. Likewise and for the reasons apply to Defendant McNeil who was Secretary of the Florida Department of Corrections at the time. Defendant McNeil was also aware of the policy above.

61. On April 21, 2010, at Union Correctional Institution, Defendant Correctional Sergeant James Fleming threatened Plaintiff Corey Milledge. That same day, Plaintiff Milledge addressed a grievance to Defendant Reddish and on April 22, 2010, to Defendant Whitehead requesting protection from Sergeant Fleming. Plaintiff placed Defendants Reddish and Whitehead on notice that Sergeant Fleming threatened him saying, "I heard you wrote me up, I'm not playing with you no more, you remember Sergeant Fontenot, you remember the one that you got fired, I'm going to get you for all that, you will be dead soon, I got something for rip writer who like to write grievances, I'm going to take your property, I'm the one that got you sprayed the other day."

19

PLOF Law Library

62. On April 26, 2010, at Union Correctional Institution, Defendant Correctional Sergeant James Fleming threatened Plaintiff Corey Milledge. On the same day, Plaintiff Milledge addressed a grievance to Defendant Reddish and on April 27, 2010, to Defendant Whitehead requesting protection from Sergeant Fleming. Plaintiff placed Defendant Reddish and Whitehead on notice that Sergeant Fleming threatened him saying, "I'm going to get you when the time get right so get ready, I might don't be the one who fuck you up, but I'm going to get another officer to handle my dirty work, I'm going take all your property soon so you can't write nothing up."

63. On May 7, 2010, Plaintiff Corey Milledge was transported from Union Correctional Institution to the Reception and Medical Center to have physical therapy on his left shoulder. That same day, Milledge was transported back to Union Correctional Institution and was taken to the movement center and placed in a holding cell. Defendant Corrections Officers Eric Canida and Vernon Lee, and Sergeant James Fleming came to the holding cell. Sergeant Fleming said to Milledge, "I told you that I was going to get you, it's no cameras up here." Sergeant Fleming opened the holding cell door. Once the holding cell door was opened, Sergeant Fleming punched Milledge in the face, head, chest, stomach, back, and other parts of his body. While Milledge was in handcuffs, waist chain, and leg shackles. Officer's Canida and Lee stood by watching and did not

20

SPCR Law Library

intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with physical abuse of inmates.

64. Sergeant Fleming continued to beat Milledge while he was in handcuffs, waist chain, and leg shackles. While Sergeant Fleming was beating Milledge, Officer Canida punched Milledge in the stomach several times. Officer Lee continued to watch. Sergeant Fleming then grabbed Milledge and slammed him on the floor for no reason. As Milledge lay on the floor in handcuffs, waist chain, and leg shackles, Sergeant Fleming grabbed Milledge's leg shackles and pulled him back and forth repeatedly. This caused Milledge pain. Milledge was then taken to N-Dormitory and placed in his assigned cell.

65. As a result of the attack, Plaintiff suffered injuries to his shoulders and back and had bruised marks to his chest area and had a laceration to his ankle area.

66. On May 7, 2010, Plaintiff Milledge addressed a Grievance to Defendant Reddish and on May 8, 2010, to Defendant Whitehead requesting protection from Officer's Canida, Lee and Fleming. Plaintiff placed Defendant's Reddish and Whitehead on notice, and after such notice Defendant's Reddish and Whitehead were aware of Officer's Canida and Fleming irrational behavior which caused Plaintiff suffered injuries to his shoulders and back. Defendant's Reddish and

Whitehead were also made aware that Officer Lee stood by watching Officers Canida and Fleming physically abused Plaintiff.

67. On May 19, 2010, at Union Correctional Institution, Defendant Correctional Officer's James Fleming and Shawn Swain threatened Plaintiff Corey Milledge. On the same day, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting protection from Officer's Fleming and Swain. Plaintiff placed Defendant Reddish on notice that Sergeant Fleming threatened him, saying to Lieutenant Swain, "I'm tired Inmate Milledge not complying with my orders to wear his blue shoes to Lake Butler not his flip-flops, I'm going to give him a break today, but the next time he wear his flip-flops I want to put him on property restriction. Matter of fact, I'm going to take his property out of his cell tomorrow and beat his ass in the movement center." Plaintiff also placed Defendant Reddish on notice that Lieutenant Swain threatened him saying, "Milledge, I'm going to beat your big head ass up."

68. On May 20, 2010, at Union Correctional Institution, Defendant Correctional Lieutenant Shawn Swain threatened Plaintiff Corey Milledge. That same day, Plaintiff Milledge addressed a Grievance to Defendant Reddish requesting protection from Lieutenant Swain. Warden Reddish forwarded Plaintiff's grievance to Defendant Jeffcoat for response. Plaintiff placed Defendant's Reddish and Jeffcoat on notice that Lieutenant Swain threatened him

FDOC Law Library

saying, "I'm going to play your game when you come out to go to Lake Butler and when you come back your property will be gone, I'm coming to the movement center to beat your ass so be ready fuck boy."

69. On May 21, 2010, at Union Correctional Institution, Defendant Correctional Sergeant James Fleming threatened Plaintiff Corey Milledge. On the same day, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting protection from Sergeant Fleming. Plaintiff placed Defendant Reddish on notice that Sergeant Fleming threatened him saying, "I heard you got a pending lawsuit, you suing my homeboy Fontenot, I got something for that."

70. On May 23, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in O-Dormitory. That same day, Milledge turned in a sick call slip requesting medical treatment. In that sick call slip, Milledge complained that he was having breathing problems and had a rash and that his eyes, neck, shoulder, and back were in pain.

71. The following day, May 24, 2010, Defendant Nurse Salina Gaskins came to Milledge's cell and said, "Inmate Milledge I have already seen you for these injuries, I'm not going to address your sick call slip, I want you to suffer." Nurse Gaskins walked away from the cell.

72. Plaintiff sought medical treatment from Defendant Reddish because Nurse Gaskins refused to address his sick call slip. On June 1, 2010, Plaintiff

Milledge addressed a grievance to Defendant Reddish requesting medical treatment. Warden Reddish forwarded Plaintiff's grievance to Defendant Jeffcoat for response. Plaintiff placed Defendant's Reddish and Jeffcoat on notice that he turned in a sick call slip requesting medical treatment because he was having breath problems and had a rash and that his eyes, neck, shoulders, and back were in pain and that his requests for medical treatment and therapy had been ignored by Nurse Gaskins.

73. On May 26, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in O-Dormitory. Defendant Correctional Officer's Eric Canida and Barry Walden came to Milledge's cell. Officer Canida told Milledge that the Inspector wanted to see him. Officer Canida asked Milledge if he coming out. Milledge said "Yes." Milledge was placed in handcuffs, waist chain, and leg shackles. Officer's Canida and Walden escorted Milledge to the holding cell. While Officer's Canida and Walden was escorting Milledge to the holding cell, Officer Canida said to Milledge, "I got something for you today, I'm tired of you making allegations against me, you got my partner Fontenot fired, and now you trying to sue him off lies that you made up, so today, I'm going to beat your ass after you get done speaking to the inspector, the Warden already gave me the green light to fuck you up, I'm going to give you a reason to report something."

74. Milledge was placed in the holding cell. Officer Walden placed a spit shield over Milledge's mouth area. Officer's Canida and Walden escorted Milledge to the conference room. Milledge talked to Mr. Whatley who is the prison inspector for the Florida Department of Corrections. After Milledge talked to Mr. Whatley, Milledge walked out of the conference room. Officer Canida ordered Milledge to shave. Officer Canida pulled Milledge's spit shield up. Milledge sat down in the chair. Inmate Ricks used hair clippers to shave Milledge's facial hair. While Inmate Ricks was shaving Milledge, Milledge stood up because Inmate Ricks was digging in his skin with the hair clippers. Officer Canida ordered Milledge to sit back down and take the pain. Milledge sat back down in the chair. Inmate Ricks once again used the hair clippers to shave Milledge's facial hair. Inmate Ricks informed Officer Canida that he was finished. Milledge stood up. Officer Canida pulled Milledge's spit shield down. Once Officer Canida adjusted Milledge's spit shield, Officer Canida used his hand to shove Milledge in the face. Officer Canida then slammed Milledge on the floor while he was in handcuffs, waist chain, and leg shackles. Defendant Correctional Officer Sarah Salle, who was in the control room at the time, and Walden stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the code of silence and non-interference with physical abuse of inmates.

75. As Milledge lay on the floor in handcuffs, waist chain, and leg shackles, Officer Canida punched Milledge in the face couple times and kneed him in the back. Officers Salle and Walden continued to watch. This was captured on the surveillance cameras at Union Correctional Institution. Milledge requested the surveillance cameras to be withheld for further evidence.

76. Defendant correctional Sergeant Michael Jenkins came on the wing. Sergeant Jenkins said to Officers Canida and Walden, "Ya'll on camera fucking up, let take him downstairs to the first floor holding cell and beat his ass." Officers Walden and Jenkins escorted Milledge to the holding cell. Once inside, Officers Walden, Jenkins, and Canida punched Milledge in the eyes, head, chest, stomach, back, and other parts of his body. While Milledge was in handcuffs, waist chain, and leg shackles. Officer Holland who was in the control room at the time stood by watching and did not intervene when she had an opportunity to do so.

77. Officers Walden, Jenkins, and Canida continued to beat Milledge while he was in handcuffs, waist chain, and leg shackles. While Officer Walden, Jenkins, and Canida was beating Milledge, Milledge fell on the floor. As Milledge lay on the floor in handcuffs, waist chain, and leg shackles, Officers Walden, Jenkins, and Canida kicked Milledge repeatedly in the shoulders, chest, stomach, legs, back, and other parts of his body. Officer Holland continued to watch. The beating against Milledge ceased.

78. As Milledge lay on the floor in handcuffs, waist chain, and leg shackles, Officer Walden once again punched Milledge in the head several times which caused him to fall unconscious. Milledge regained his consciousness. Once Milledge regained his consciousness, Defendant Correctional Officers Jesse Kelly, James Fleming, and Shawn Swain came into the holding cell and punched Milledge repeatedly in the eyes, head, chest, stomach, back, and other parts of his body. While Milledge was still in handcuffs, waist chain, and leg shackles. Officers Holland continued to watch. The beating against Milledge once again ceased.

79. Officer Canida said to Milledge, "I'm fixing kill you today." Officer Canida then grabbed Milledge around the neck and choked him until he fell unconscious. Defendant Correctional Officers Fredrick Walker, Kelly, Walden, Fleming, Holland, and Swain stood by watching and did not intervene when they had an opportunity to do so.

80. Milledge regained his consciousness. As Milledge lay on the floor in handcuffs, waist chain, and leg shackles, Sergeant Fleming placed a foot over Milledge's head and face area and applied pressure to it while Lieutenant Swain was standing on his leg shackles. This caused Milledge pain. Lieutenant Swain saw Milledge was handcuffed in the front of him. Lieutenant Swain ordered an Officer to handcuff Milledge in the back of him. As Ordered, an Officer handcuffed

Milledge in the back of him when Lieutenant Swain was aware that Milledge had a medical pass to be handcuffed in the front of him at all times.

81. Officers Kelly and Walker escorted Milledge to the medical room. A nurse saw Milledge for a post use-of-force physical. While the nurse was seeing Milledge for a post use-of-force physical, Milledge informed the nurse that he was physically assaulted by officers who kicked and punched him all over his body including his chest area as well. The nurse said to Milledge, "I'm not looking at your chest area." Milledge informed the nurse that his right eye was swollen. The nurse said to Milledge, "I'm not going to document no injuries." Lieutenant Swain then said, "That sounds good to me."

82. Officers Kelly and Walker escorted Milledge to his assigned cell. Milledge's waist chain, and leg shackles were removed. Milledge was then placed in the cell and the cell door were closed. The flap was opened. Officers Kelly or Walker took off Milledge's handcuffs. Once handcuffs were removed, Milledge took off his spit shield. Milledge then stuck his hands out of the flap and held onto the flap with his hands. Officers Kelly and Walker slammed Milledge hands in the flap and pushed the flap against Milledge hands. Officers Kelly and Walker continued to push the flap against Milledge hands after Milledge had ceased resisting. Lieutenant Swain stood by watching.

83. A nurse came to Milledge's cell. The nurse once again saw Milledge for a post use-of-force physical. Milledge then informed Lieutenant Swain that he had a psych emergency and that he wanted to kill himself. Lieutenant Swain walked away from the cell.

84. On May 28, 2010, Plaintiff Milledge addressed a grievance to Defendants Reddish and Whitehead requesting protection from officers Canida, Walden, Kelly, Walker, Jenkins, Fleming, and Swain. Plaintiff placed Defendants Reddish and Whitehead on notice, and after such notice Defendants Reddish and Whitehead were aware of Officers Canida, Walden, Kelly, Walker, Jenkins, Fleming, and Swain irrational behavior which caused Plaintiff suffered injuries to his head, eyes, shoulders, and back. Defendants Reddish and Whitehead were also made aware that Lieutenant Swain intentionally interfered with medical treatment that was prescribed to Plaintiff and that officers Salle and Holland stood by watching either officers Canida, Walden, Kelly, Walker, Jenkins, Fleming, and Swain physically abused Plaintiff.

85. On May 31, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in O-Dormitory. On the same day, Milledge turned in a sick call slip requesting medical treatment. In that sick call slip, Milledge complained that he was having breathing problems and had a rash and that this eyes, neck, shoulders, and back were in pain.

RJCR Law Library

86. The follow two days, June 2, 2010, Defendant Nurse Salina Gaskins came to Milledge's cell. Nurse Gaskins said to Milledge, "I got your sick call slip, but I'm not going to see you." Nurse Gaskins walked away from the cell.

87. Plaintiff sought medical treatment from Defendant Reddish because nurse Gaskins refused to address his sick call slip. On June 6, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting medical treatment. Warden Reddish forwarded Plaintiff's grievance to Defendant Jeffcoat for response. Plaintiff placed Defendants Reddish and Jeffcoat on notice that he turned in a sick call slip requesting medical treatment because he was having breathing problems and had a rash and that his eyes, neck, shoulders, and back were in pain and that his requests for medical treatment and therapy had been ignored by nurse Gaskins.

88. On June 10, 2010, Plaintiff Corey Milledge was at the reception and medical center. Milledge was in the hallway being escorted to the transport van. While Milledge was being escorted to the transport van, Milledge was not feeling good. Milledge informed Defendant Correctional Sergeant Philip Maginnis that he was feeling light headed and dizzy and that he needed medical attention. Milledge informed Sergeant Maginnis that he was having a medical emergency. Sergeant Maginnis said to Milledge, "I'm not letting you see no medical staffs, I want you to die, I'm going to kill you for Fontenot."

89. Milledge passed out in the hallway. Milledge regained his consciousness. Milledge was placed in a wheelchair. Lieutenant Kenner pushed Milledge in a wheelchair to the transport van. While Lieutenant Kenner was pushing Milledge in a wheelchair to the transport van, Milledge informed Lieutenant Kenner that he was having a medical emergency because he felt dizzy and that his chest was hurting. Lieutenant Kenner said to Milledge, "I don't care you getting your pussy ass on the van, I'm not allowing you to see no medical." Sergeant Maginnis then told Lieutenant Kenner that Milledge, "Just playing games and faking that he had a seizure we going to beat his ass when he get back to the movement center." Milledge was placed in the transport van.

90. Milledge was being transported to Union Correctional Institution, when Sergeant Maginnis said to Milledge, "I'm going to say you kicking the window, we going to beat your ass when you get back to the movement center so get ready fuck boy." Sergeant Maginnis then pulled over and parked the transport van on the side of the road. Sergeant Maginnis told Sergeant Jenkins to keep going to the institution. Defendant Corrections Officers Craig Slocum and Maginnis got out of the transport van. Sergeant Maginnis then opened the side door of the transport van. Once the transport van door was opened, Officer Jefferson aimed a shotgun at Milledge's face, saying "I will blow your head off if you do anything stupid." Defendant Corrections Officer Julian Bullard then aimed a pistol at Milledge's

head, saying "Give me a reason you will die today." Officer's Slocum and Maginnis each grabbed Milledge's arm and yanked him out of the transport van. Sergeant Maginnis saw Milledge was handcuffed in the front of him. Sergeant Maginnis took off Milledge's handcuffs and handcuffed him in the back of him. Sergeant Maginnis then placed a spit shield over Milledge's mouth area. Sergeant Maginnis told Officer Jefferson that Milledge is heightened security and on spit shield status and that he tired of him keep "banging and kicking on the window." Milledge was placed back in the transport van.

91. Sergeant Maginnis drove the transport van to Union Correctional Institution. Once there, Sergeant Maginnis informed Sergeant Swiggs that he fixing beat Milledge ass in the movement center. Sergeant Swiggs said to Maginnis, "I'm down for it, I will meet y'all at the movement center." Defendant Corrections Officer Christopher McFarland then said, "I want Milledge too." Milledge was taken to the movement center. Officers McFarland and Swiggs came to the movement center as well. This was captured on the surveillance cameras at Union Correctional Institution. Milledge requested the surveillance cameras to be withheld for further evidence.

92. Sergeant Maginnis opened the side door of the transport van. Officers Bullard and Slocum each grabbed Milledge's arm and escorted him into the movement center. Once inside, Sergeant Swiggs told Milledge that he know he

fixing get his ass whooped. Sergeant Swiggs asked Milledge how he want to do this. Milledge didn't say nothing. Sergeant Swiggs told Milledge that he given him an option to get his ass whoop with his shackles on or off. Officer McFarland then said to Milledge, "Make your mind up because it's going down today." Milledge didn't say nothing. Sergeant Swiggs ordered Officer Slocum to take off Milledge's restraints. As ordered, Officer Slocum took off Milledge's handcuffs, waist chain, and leg shackles. Once restraints were removed, Officers Bullard, Slocum, McFarland, and Swiggs punched Milledge in the eyes, head, chest, stomach, back, and other parts of his body. Defendant Correctional Sergeants Michael Harris and Maginnis, and Officer Braden and another officer stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with Physical Abuse of Inmates.

93. Officers Bullard, Slocum, McFarland, and Swiggs continued to beat Milledge. While Officers Bullard, Slocum, McFarland, and Swiggs was beating Milledge, Milledge fell on the floor. As Milledge lay on the floor, Officers Bullard, Slocum, McFarland, and Swiggs kicked Milledge in the stomach and back repeatedly. Officers Braden, Harris, Maginnis, and another officer continued to watch.

94. Milledge was placed in the holding cell shortly thereafter. Officers McFarland and Swiggs left the area. Sergeant Harris came to the holding cell. Sergeant Harris said to Milledge, "It's over, you not going tell what happen?" Milledge replied, "I'm going to tell on all y'all." Sergeant Harris said to Milledge, "Since you going tell, I'm going give you something to tell." Sergeant Harris opened the holding cell door. Once the holding cell door was opened, Officers Bullard, Slocum, Harris, and Maginnis punched Milledge repeatedly in the eyes, face, chest, stomach, back, and other parts of his body. Milledge fell on the floor. As Milledge lay on the floor, Officer's Bullard, Slocum, Harris, and Maginnis kicked Milledge repeatedly in the shoulders, chest, stomach, legs, back, and other parts of his body. While Milledge yelled out loud for "Help." Officer Braden and another Officer continued to watch.

95. An officer came to the holding cell with a handheld camera in his hands. The handheld camera was turned on and placed on Milledge. An officer placed Milledge in handcuffs, waist chain, and leg shackles. A nurse saw Milledge for a post use-of-force physical. Milledge was then taken to O-Dormitory and placed in his assigned cell.

96. As a result of the attack, Plaintiff suffered injuries to his head, eyes, ribs, shoulders, knee, back, and ankle, and had a laceration to his knee area. Plaintiff's right eye was also bruised and swollen for approximately two (2) weeks.

JPCI Law Library

97. On June 20, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting protection from Officers Slocum, Bullard, McFarland, Harris, Swiggs, and Maginnis. Plaintiff placed Defendant Reddish on notice, and after such notice Defendant Reddish were aware of Officers Slocum, Bullard, McFarland, Harris, Swiggs, and Maginnis' irrational behavior which caused Plaintiff suffered injuries to his head, eyes, shoulders, back, knee, and ankle. Defendant Reddish were also made aware that Officers Bullard and Jefferson pointed gun at Plaintiff and threatened him and that Officer Braden and another officer stood by watching Officers Slocum, Bullard, McFarland, Harris, Swiggs, and Maginnis physically abused Plaintiff.

98. On June 11, 2010, at Union Correctional Institution, Plaintiff Corey Milledge was housed alone in T-Dormitory. Officer Meisner came to Milledge's cell. Officer Meisner opened the flap. Officer Meisner gave Milledge some toilet paper. Milledge then stuck his right arm out of the flap and held onto the flap. Milledge informed Officer Meisner that he have a medical emergency due to having chest pain. Officer Meisner ordered Milledge to stick his arm back in the flap. Milledge refused to do so. Officer Meisner then said to Milledge, "You not seeing no medical."

99. Defendant Corrections Officer Brian Norman came to Milledge's cell. Officer Norman grabbed Milledge's right arm and said, "pussy nigger I'm going to

break your arm today." Officer Norman then pulled on Milledge's right arm several times and pressed Milledge's right arm against the flap after Milledge had ceased resisting. Officer Meisner stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the code of silence and non-interference with physical abuse of inmates.

100. Officer Norman continued to physically abuse Milledge. While Officer Norman was physically abusing Milledge, Officer Norman punched Milledge in the right hand couple times. Officer Meisner continued to watch. This was captured on the surveillance cameras at Union Correctional Institution. Milledge requested the surveillance cameras to be withheld for further evidence.

101. A nurse came to Milledge's cell. The nurse saw Milledge for a post use-of-force physical.

102. As a result of the attack, Plaintiff suffered injuries to his right shoulder, right bending arm, and right pinky finger.

103. On June 23, 2010, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting protection from Officer Norman. Plaintiff placed Defendant Reddish on notice, and after such notice Defendant Reddish were aware of Officer Norman irrational behavior which caused Plaintiff suffered injuries to his right bending arm and right pinky finger. Defendant Reddish were also made aware that Officer Meisner stood by watching Officer Norman physically abused Plaintiff.

104. On May 16, 2011, Plaintiff Corey Milledge was transported from reception medical center to Union Correctional Institution and was taken to the movement center and placed in a holding cell. Officer's Braden and Macey came to the holding cell. Officer Braden said to Milledge, "I'm fixing to whoop your ass for lying on me in a grievance you written." Officer Braden opened the holding cell door. Once the holding cell door was opened, Officers Braden and Macey punched Milledge repeatedly in the face, head, chest, stomach, back, and other parts of his body. Two other corrections officers stood by watching and did not intervene in obedience to a long-standing custom or policy at Union Correctional Institution of the Code of Silence and Non-Interference with Physical Abuse of Inmates.

105. An Officer placed Milledge in handcuffs, waist chain, and leg shackles. The officers escorted Milledge to the prison medical clinic. Upon Milledge coming through the medical clinic door and walking up the stairs, Defendant Correctional Sergeant Michael Harris punched Milledge repeatedly in the face, head, chest, stomach, back, and other parts of his body. Four other corrections officers stood by watching and did not intervene when they had an opportunity to do so.

106. A nurse saw Milledge for a physical. Milledge was then taken to T-Dormitory and placed in his assigned cell.

107. As a result of the attack, Plaintiff suffered injuries to his neck, shoulders, and back and also had bruised marks to his chest area.

108. On May 19, 2011, Plaintiff Milledge addressed a grievance to Defendant Reddish requesting protection from Officers Braden, Macey, and Harris. Plaintiff paced Defendant Reddish on notice, and after such notice Defendant Reddish were aware of Officer's Braden, Macey, and Harris irrational behavior which caused Plaintiff suffered injuries to his neck and back. Defendant Reddish were also made aware that other officers stood by watching Officers Braden, Macey, and Harris physically abused Plaintiff.

109. After the incident above, Plaintiff Milledge has suffered severe emotional distress and suffers from terrifying "flashbacks" and "nightmares" from the physical abuse Defendants subjected him to. Plaintiff has also subsequently been threatened with retaliatory physical harm and death by other corrections officers. Union Correctional Institution Lieutenant Lee came to Plaintiff's cell door and said, "We're going to kill you soon." Defendants Reddish, Whitehead, Jeffcoat, and McNeil were also apprised of the threats against Plaintiff and refused to provide him protection, causing more mental distress. Thus, Defendants Reddish, Whitehead, Jeffcoat, and McNeil were aware of the physical abuse, the serious injuries, subsequent threats, and the denial of medical care and mental health care and condoned that ongoing wrongdoing. Likewise and for the same

reasons, Defendant Julie Jones or her predecessors in office were aware of the physical abuse, the serious injuries, the threats, and the failure to provide medical care and mental health care.

110. Over a long period of time, the medical file obtained by the Florida Department of Corrections has showed that Plaintiff's shoulders bones were chipped and he will need surgery to repair. An orthopedist at the reception and medical center recommended surgery on both Plaintiff's shoulders. Plaintiff had surgery on his left shoulder but not on his right shoulder. After Milledge had surgery on his left shoulder, Plaintiff filed numerous grievances requesting the Department to follow through on the care and provide him surgery on his right shoulder. Defendant Jones and its agents refused to do so.

111. Every corrections officer including Defendants who work at Union Correctional Institution had a duty to protect an inmate like the Plaintiff, and they refused to do so as well.

112. The long-standing custom or policies that was maintained at Union Correctional Institution were unconstitutional and caused Plaintiff injuries and pain and suffering and emotional distress, and also caused Plaintiff to be deprived of his rights under the Eighth Amendment to the U.S. Constitution.

# CLAIMS

## Count I: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS CANIDA, LEE, AND FLEMING

113. Plaintiff realleges the general facts as if fully set forth herein.

114. Defendants Canida, Lee, and Fleming in failing to protect Plaintiff or failing to intervene in the physical abuse of Plaintiff after Canida, Lee, and Fleming were aware of facts that gave rise to an inference of risk of serious harm and drew that inference as well were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

115. Defendants Canida, Lee, and Fleming watched Inmate Willis physically abused Plaintiff and did not intervene when they had an opportunity to do so.

116. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count II: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT FLEMING

117. Plaintiff realleges the general facts as if fully set forth herein.

118. Defendant Fleming in intentionally denying medical treatment to Plaintiff after Fleming were aware of facts that gave rise to an inference of risk of serious harm and drew that inference as well were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

119. Defendant Fleming is a correctional Sergeant at Union Correctional Institution who had the power to see that timely medical care was provided to Plaintiff.

120. Defendant Fleming watched Inmate Willis physically abused Plaintiff. After physical abuse took place, Plaintiff asked Defendant Fleming for medical attention because he was bleeding from the nose and felt agonizing pain in his back area. Defendant Fleming ignored Plaintiff requests for medical attention.

121. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count III: VIOLATION OF CONSTITUTION RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS FLEMING, CANIDA, AND LEE

122. Plaintiff realleges the general facts as if fully set forth herein.

123. Defendants Fleming, Canida, and Lee in physically abusing or failing to intervene in the physical abuse of Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

124. Defendant Fleming used excessive force against Plaintiff by beating him while Defendants Canida and Lee stood by watching and did not intervene when they had an opportunity to do so.

125. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

**Count IV**: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT SWAIN

126. Plaintiff realleges the general facts as if fully set forth herein.

127. Defendant Swain in failing to intervene in the physical abuse of Plaintiff after Swain saw an officer used excessive force against Plaintiff by twisting his left thumb way back in an attempt to break it were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

128. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

**Count V**: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT SWAIN

129. Plaintiff realleges the general facts as if fully set forth herein.

130. Defendant Swain in intentionally interfering with medical treatment that was prescribed to Plaintiff after Swain were aware of facts that gave rise to an inference of risk of serious harm and drew that inference as well were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

131. Defendant Swain is a correctional lieutenant at Union Correctional Institution who had a duty to comply with a physician order of medial pass.

132. A physician ordered Plaintiff to have a medical pass to be handcuffed in the front of him because he suffered from injuries to his shoulders which caused him pain. A copy of the medical pass that physician ordered Plaintiff to have was placed in security guards or Plaintiff's prison file at Union Correctional Institution.

133. On two separate occasions, Defendant Swain ordered an officer to handcuff Plaintiff in the back of him. As ordered, an officer handcuffed Plaintiff in the back of him when Defendant Swain was aware that Plaintiff had a medical pass to be handcuffed in the front of him at all times. Defendant Swain showed deliberate indifference to Plaintiff's injuries and pain.

134. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count VI: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS FLEMING, CANIDA, AND LEE

135. Plaintiff realleges the general facts as if fully set forth herein.

136. Defendants Fleming, Canida, and Lee in physically abusing or failing to intervene in the physical abuse of Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

137. Defendants Fleming and Canida used excessive force against Plaintiff by beating him while Defendant Lee stood by watching and did not intervene when he had an opportunity to do so.

138. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count VII: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT GASKINS

139. Plaintiff realleges the general facts as if fully set forth herein.

140. Defendant Gaskins in failing to provide medical treatment or intentionally denying medical treatment to Plaintiff after Gaskins were aware of facts that gave rise to an inference of risk of serious harm and drew that inference as well were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

141. Defendant Gaskins is a nurse at Union Correctional Institution who had a duty to provide medical care and had the power to see that timely medical care was provided to Plaintiff.

142. Defendant Gaskins received couple sick call slips from Plaintiff that requested medical treatment and described the seriousness of the injuries and the pain they caused and showed deliberate indifference to the injuries and pain.

143. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count VIII: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS CANIDA, WALDEN, FLEMING, JENKINS, SWAIN, WALKER, KELLY, AND SALLE

44

144. Plaintiff realleges the general facts as if fully set forth herein.

145. Defendants Canida, Walden, Fleming, Jenkins, Swain, Walker, Kelly, and Salle in physically abusing or failing to intervene in the physical abuse of Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

146. Defendants Canida, Fleming, Jenkins, Swain, and Kelly used excessive force against Plaintiff by beating him while Defendants Walker and Salle stood by watching parts of the physical abuse against Plaintiff and did not intervene when they had an opportunity to do so.

147. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count IX: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS BULLARD, HARRIS MAGINNIS, McFARLAND, AND SLOCUM

148. Plaintiff realleges the general facts as if fully set forth herein.

149. Defendants Bullard, Harris, Maginnis, McFarland, and Slocum in physically abusing or failing to intervene in the physical abuse of Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

150. Defendants Bullard, Harris, Maginnis, McFarland, and Slocum used excessive force against Plaintiff by beating him.

151. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count X: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT NORMAN

152. Plaintiff realleges the general facts as if fully set forth herein.

153. Defendant Norman in physically abusing Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

154. Defendant Norman used excessive force against Plaintiff by pulling on his right arm and pressing his right arm against the flap and punching him.

155. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count XI: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANT HARRIS

156. Plaintiff realleges the general facts as if fully set forth herein.

157. Defendant Harris in physically abusing Plaintiff were in violation of the Eighth Amendment to the U.S. Constitution, prohibiting cruel and unusual punishment.

158. Defendant Harris used excessive force against Plaintiff by beating him.

159. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count XII: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS McNEIL, REDDISH, AND JEFFCOAT

160. Plaintiff realleges the general facts as if fully set forth herein.

161. Defendants McNeil, Reddish, and Jeffcoat are liable to Plaintiff for violation of the Eighth Amendment to the U.S. Constitution in failing to provide medical treatment to Plaintiff after McNeil, Reddish, and Jeffcoat were aware of facts that gave rise to an inference of risk of serious harm and drew that inference as well and actual notice through Plaintiff's grievance of appeal.

162. Defendant McNeil was secretary of the Florida Department of Corrections at the time while Defendant Reddish was warden and Defendant Jeffcoat were assistant warden of Union Correctional Institution, they were the policymakers who were responsible for the provision of medical care at Union Correctional Institution, and they had the power to see that timely medical care was provided to Plaintiff.

163. Defendants McNeil, Reddish, and Jeffcoat received numerous requests for medical treatment from Plaintiff that described the seriousness of the injuries

and the pain they caused and showed deliberate indifference to the injuries and pain.

164. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count XIII: VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983 AGAINST DEFENDANTS McNEIL, REDDISH, WHITEHEAD, AND JEFFCOAT

165. Plaintiff realleges the general facts as if fully set forth herein.

166. Defendants McNeil, Reddish, Whitehead, and Jeffcoat are liable to Plaintiff for violation of the Eighth Amendment to the U.S. Constitution in the acts of excessive force by officers Fleming, Canida, Swain, Jenkins, Walden, Kelly, Walker, Harris, Maginnis, Bullard, Slocum, McFarland, Swiggs, Norman, Braden, and Macey and the acts of officers Lee, Curtis, Salle, Holland, Jefferson, and Meisner, for deliberate indifference in the supervision and retention of officers above, and in the acquiescence to those officers' acts of excessive force.

167. Defendant McNeil was secretary of the Florida Department of Corrections at the time while Defendant Reddish was warden and Defendants Whitehead and Jeffcoat were assistant warden of Union Correctional Institution, they were charged with supervision and retention of officers Fleming, Canida, Swain, Jenkins, Walden, Kelly, Walker, Harris, Maginnis, Bullard, Slocum,

McFarland, Swiggs, Norman, Braden, Macey, Lee, Curtis, Salle, Holland, Jeffcoat, and Meisner.

168. The complained of actions and behavior of officers Fleming, Canida, Swain, Jenkins, Walden, Kelly, Walker, Harris, Maginnis, Bullard, Slocum, McFarland, Swiggs, Norman, Braden, Macey, Lee, Curtis, Salle, Holland, Jefferson, and Meisner occurred while they were on duty and working as corrections officers for the Florida Department of Corrections at Union Correctional Institution under Defendants McNeil, Reddish, Whitehead, and Jeffcoat's supervision.

169. Defendants McNeil, Reddish, Whitehead, and Jeffcoat were aware of a history of widespread abuse of inmates at Union Correctional Institution.

170. Defendants McNeil, Reddish, Whitehead, and Jeffcoat failed to discipline officers who physically abused inmates or failed to discipline officers who stood by watching other officers physically abuse inmates at Union Correctional Institution.

171. Defendants McNeil, Reddish, and Whitehead were aware prior to officers Fleming and Canida physically abusing Plaintiff for the first time that inmate Willis physically abused Plaintiff while officers Fleming, Canida, and Lee stood by watching and did not intervene when they had an opportunity to do so.

172. Defendants McNeil, Reddish, and Whitehead were aware prior to Officer Swain physically abusing Plaintiff for the first time that nurse Gaskins threatened Plaintiff saying, "My boyfriend Swain going to beat your ass..."

173. Defendants McNeil and Reddish were aware prior to Officer Swain physically abusing Plaintiff for the first time that Officer Swain threatened Plaintiff saying, "I'm going to break your jaw..."

174. Defendants McNeil and Reddish were aware prior to Officer Swain physically abusing Plaintiff for the first time that Officer Swain threatened Plaintiff saying, "I'm going to kill you, I got something for you."

175. Defendants McNeil, Reddish, and Whitehead were aware prior to Officer Fleming physically abusing Plaintiff for the second time that Officer Fleming threatened Plaintiff saying, "I heard you wrote me up, I'm not playing with you no more, you remember Sergeant Fontenot, you remember the one you got fired, I'm going to get you for all that, you will be dead soon, I got something for rip writer who like to write grievances..."

176. Defendants McNeil, Reddish, and Whitehead were aware prior to officers Swain, Jenkins, Kelly, Walker, Harris, Maginnis, Bullard, Slocum, McFarland, Swiggs, Norman, Braden, and Macey physically abusing Plaintiff for the first time that Officer Fleming threatened Plaintiff saying, "I'm going to get

you when the time get right so get ready, I might don't be the one who fuck you up, but I'm going to get another officer to handle my dirty work..."

177. Defendants McNeil and Reddish were aware prior to Officer Fleming physically abusing Plaintiff for the third time that Officer Fleming threatened Plaintiff saying to Officer Swain, "I'm going to take his property out of his cell tomorrow and beat his ass in the movement center."

178. Defendants McNeil and Reddish were aware prior to Officer Swain physically abusing Plaintiff for the first time that Officer Swain threatened Plaintiff saying, "Milledge, I'm going to beat your big head ass up."

179. Defendants McNeil, Reddish, and Jeffcoat were aware prior to Officer Swain physically abusing Plaintiff for the first time that Officer Swain threatened Plaintiff saying, "I'm coming to the movement center to beat your ass so be ready fuck boy."

180. Defendants McNeil and Reddish were aware prior to Officer Fleming physically abusing Plaintiff for the third time that Officer Fleming threatened Plaintiff saying, "I heard you got a pending lawsuit, you suing my homeboy Fontenot, I got something for that."

181. Defendants McNeil and Reddish were aware prior to Officer Braden physically abusing Plaintiff for the first time that Officer Braden stood by watching

officers Bullard, McFarland, Slocum, Swiggs, Harris, and Maginnis physically abused Plaintiff and did not intervene when he had an opportunity to do so.

182. Defendants McNeil and Reddish were aware prior to Officer Harris physically abusing Plaintiff for the second time that Officer Harris had physically abused Plaintiff once before.

183. The above facts support an inference that Defendants McNeil, Reddish, Whitehead, and Jeffcoat knew that officers Fleming, Canida, Swain, Jenkins, Walden, Kelly, Walker, Harris, Maginnis, Bullard, Slocum, McFarland, Swiggs, Braden, and Macey posed a risk of serious harm to Plaintiff and were deliberately indifferent to the risk of harm in failing to supervise, discipline, and terminate those officers to abate that risk. Defendants McNeil, Reddish, Whitehead, and Jeffcoat in failing to supervise, discipline, and terminate officers Fleming, Canida, Swain, Jenkins, Walden, Kelly, Walker, Harris, Maginnis, Bullard, Slocum, McFarland, Swiggs, Braden, and Macey enabled them to physically abuse Plaintiff.

184. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## Count XIV: REQUEST FOR INJUNCTIVE RELIEF AGAINST DEFENDANT JULIE JONES IN HER OFFICIAL CAPACITY

185. Plaintiff realleges the general facts as if fully set forth herein.

186. This is an action for injunctive relief under 42 U.S.C. 1983 and Common Law.

187. In December of 2009, Plaintiff Corey Milledge had surgery on his left shoulder. An orthopedist at the reception and medical center recommended surgery on Plaintiff's right shoulder ninety(90) days thereafter. Ninety days later was in March of 2010.

188. Defendant Jones or its agents failed to provide Plaintiff surgery in March of 2010. Because of this, Plaintiff's right shoulder has gotten worse. More specifically, Plaintiff cannot lift his right shoulder over his head. When Plaintiff moves a certain way his right shoulder falls out of socket which causes him great pain.

189. Since March of 2010, Defendant Crews or its agents have received numerous grievances from Plaintiff requesting that they follow through on the care and provide him surgery on his right shoulder. Defendant Jones and its agents refused to do so.

190. Upon information and beliefs, Defendant Jones or its agents is refusing to provide Plaintiff surgery as a way to save money for the Florida Department of Corrections.

191. On examination of facts, the acts and omissions of Defendant Jones or its agents pose a risk of serious harm to Plaintiff. Plaintiff has a good chance of success on the merits and he stands to suffer irreparable harm for which there will be no adequate remedy at law.

192. Plaintiff is entitled to injunctive relief against Defendant Jones to prevent further violation of Plaintiff's civil rights based on failure to provide medical care or surgery.

193. As a result of the wrongful acts alleged above, Plaintiff suffered bodily injuries causing pain and suffering, and emotional distress.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff seeks judgment as follows:

A. Declaration that the acts and omissions of Defendants herein violate Plaintiff's rights under the Constitution and Laws of the United States;

B. Injunctive relief, including an order directing Defendant Jones to provide Plaintiff surgery on his right shoulder within ninety(90) days;

C. Compensatory damages against each of the Defendants herein;

D. Punitive damages against Defendants sued individually;

E. Pre-judgment interest on all economic losses and post-judgment interest;

F. A trial by jury on all issues so triable;

G. Any additional relief this court deems just, proper, and equitable.

Respectfully Submitted,

Corey Milledge, DC# Q12023
Blackwater River Corr. Facility
5914 Jeff Ates Road
Milton, Florida 32583

54

## **VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged are true, except as to the information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct as well.

Executed on this 27<u>th</u> day of _A uGuST_, 2015.

Corey Milledge, DC# Q12023
Blackwater River Corr. Facility
5914 Jeff Ates Road
Milton, Florida 32583